**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONNA RAE HARRISON, | Case No.: 1:19-cv-01683-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Donna Rae Harrison ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 6, 8, 21.)

1

and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 3. 2015. AR 203-06, 207-12.[2] Plaintiff alleged that she became disabled on March 31, 2014, due to OCD, depression, colitis, irregular bowel syndrome, nervous breakdowns, anxiety, neuropathy in both feet and both legs, arthritis in legs and hands, acid reflux, and high blood pressure. AR 227, 231. Plaintiff's application was denied initially and on reconsideration. AR 114-17, 121-26. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Joyce Frost-Wolf held a hearing on February 21, 2018, and issued an order denying benefits on May 1, 2018. AR 41-72, 22-35. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on February 21, 2018, in Fresno, California. Plaintiff appeared with her attorney, Kenton Koszdin. Cheryl R. Chandler, an impartial vocational expert, also appeared. AR 41.

Plaintiff testified that she lives in a single-story, two-bedroom home with two friends and three small dogs. AR 46-47. Plaintiff testified that she graduated from high school but has had no vocational training. AR 47.

Plaintiff testified that she previously worked for In-Home Supportive Services. AR 47. In her position there, Plaintiff would care for clients, prep meals, bathing, dressing, taking them to doctor's appointments, do client grocery shopping, and order their medication. AR 47-48. Plaintiff was required to lift patients when they needed assistance including aiding them in standing up or leaning positions. AR 48. Plaintiff stopped working for In-Home Supportive Services when she had a nervous breakdown. AR 48. Plaintiff's ex-husband had just left her, she had lost her home, and was mentally and physically "wore down." AR 48.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff testified that she is able to do light housekeeping, and take her dogs for short walks, once a day for a couple of blocks. AR 49. Plaintiff further testified that she has good days and bad days. AR 49. Plaintiff's housekeeping includes dusting, sweeping, mopping, and changing sheets. AR 50. But she is unable to get on her hands and knees to clean or clean large appliances. AR 50. Plaintiff testified she is able to prepare meals that are not complex without breaks. AR 50. Plaintiff is able to do these activities for about 20-30 minutes before requiring a break. AR 51. Plaintiff testified that she is in a reclined position for about 5-6 hours in an eight-hour workday. AR 51. Plaintiff further testified that she is able to do small grocery shopping trips. AR 51.

Plaintiff testified that both of her hands are constantly aching, from her fingers up her arms. AR 52. Plaintiff also testified that her Lyrica prescription helps a little. AR 52. Rubbing her hands also helps with the aching. AR 52. The pain also intensifies when she is carrying objects like grocery bags. AR 52. Plaintiff further testified that in addition to Lyrica, she takes Aleve over the counter and it provides some relief. AR 53.

Plaintiff testified that she gets both breakdowns and panic attacks due to anxiety. AR 54. When Plaintiff is experiencing a breakdown, she feels like her world is collapsing on her, she cannot think straight, her mind goes in circles. AR 54. Plaintiff also testified that she has OCD symptoms like color coding her clothing and constantly washing her hands. AR 54. Plaintiff takes anxiety medication that helps, but she still has good days and bad days. AR 55. Plaintiff also testified that she has memory loss with her breakdowns. AR 56.

Plaintiff testified that she receives injections for the pain in her knees, and it provides some help. AR 56. Plaintiff testified that her knees swell a lot, she elevates them to relieve the swelling. AR 56. Plaintiff is unsure what causes it but thinks the weather plays a role. AR 57.

Plaintiff testified that she is able to walk for about 20 minutes and is able to sit for about 15-20 minutes at one time. AR 57.

In response to questions by her attorney, Plaintiff testified that she also has pain in her shoulders and her feet. AR 58. Plaintiff's feet and ankles swell like her knees. AR 59. Plaintiff testified that Dr. Thea Gragine diagnosed her with fibromyalgia. AR 59-60. Plaintiff testified that on her worse pain days she does not want to get up and get dressed instead she just lays in bed all day.

AR 60-61. Plaintiff further testified that her bad days are random but tend to occur after a day where she pushed herself more. AR 61. Plaintiff testified that she received gastric bypass and losing weight helped relieve pressure on her joints. AR 62-63. Plaintiff testified that she has asthma, but it is managed with her inhaler. AR 63. Plaintiff also testified that she has numbness and tingling in her lower extremities, even when she was working, but it has worsened. AR 64-65.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Cheryl Chandler. The VE characterized Plaintiff's past work as semiskilled medium, SVP 3. AR 66. The VE also testified that Plaintiff's skills would be transferable to the light level job of Companion. AR 67. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and past work experience. The ALJ also asked the VE to assume an individual with Plaintiff's age, education, and work history who would be able to work at the light level with frequent ramps and stairs, no ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and frequent handling and fingering bilaterally. AR 67. The VE testified that there would be work in the national economy with transferrable skills from Plaintiff's past work that such an individual could perform, including, companion, ticket taker, cashier, and storage facility clerk. AR 67-68.

For the second hypothetical, the ALJ asked the VE to take hypothetical one but that individual would need the ability to alternate between sitting and standing at 30-minute intervals. AR 68. The VE testified that there would be jobs in the national economy including cashier, but the number of jobs available would be reduced due to the restriction. AR 69. Such jobs would include cashier, storage facility clerk and courier. AR 68.

For the third hypothetical, the ALJ asked the VE to take hypothetical one but that individual would be able to perform simple, routine tasks. AR 69. The VE testified that there would be no more transferable skill jobs but there would still remain jobs in the national economy that such an individual could perform. AR 69.

For the final hypothetical, the ALJ asked the VE to take hypothetical one, two, and three but that individual would be able to attend work for a maximum of all but two workdays a month due to mental health systems, or pain, or fatigue, that would require the individual to call into work

4

unexpectedly or leave work unexpectedly. AR 69. The VE testified that such an individual would not be able to work. AR 70.

Plaintiff's counsel then asked the VE a hypothetical. Counsel asked the VE to consider an individual who could lift 20 pounds occasionally, lift 10 pounds frequently, stand or walk for two hours, sit for four hours, with a need to alternate sit/stand at will. AR 70. The VE testified that there would be no jobs that such an individual could perform. AR 70.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 35. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 31, 2014, to the date last insured, December 31, 2017. AR 24. The ALJ identified fibromyalgia with neuropathy, osteoarthritis changes in bilateral knees, osteoarthritis of the hip, osteopenia of the hands, degenerative disc disease, and anxiety as severe impairments. AR 24. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 25.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except she is able to climb ramps or stairs frequently, is precluded from climbing ladders, ropes, or scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl, is able to frequently handle and finger bilaterally, can alternate between sitting and standing at thirty minute intervals, and is able to perform simple routine tasks. AR 25-33. With this RFC, the ALJ found that Plaintiff could not perform her past relevant work as a home attendant. AR 31. Alternatively, the ALJ concluded that Plaintiff could perform other jobs in the national economy, such as cashier, storage facility clerk, and courier. AR 34-35. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 35.

///

///

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

Plaintiff contends that the ALJ erred by (1) rejecting the opinion of Dr. Buttan without setting forth specific, legitimate reasons; (2) failing to develop the record and obtain an assessment of Plaintiff's mental limitations from a treating or examining source; and (3) by discounting the opinion of PA-C Packer, an "other" medical source, without proper evaluation as required by the regulations.

**A.  The ALJ Did Not Err in Evaluating the Opinion Evidence from Dr. Buttan.**

Plaintiff first argues that the ALJ erred by rejecting the opinion of Dr. Buttan without setting forth specific, legitimate reasons. (Doc. No. 18 at 7.)  The Court disagrees.

In assessing a claimant's RFC, the ALJ may consider any statements provided by acceptable medical sources. *See* 20 C.F.R. §§ 404.1527, 416.927.  Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id*. Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id*. If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id*.

On October 7, 2015, Dr. Vinay Buttan completed a consultative examination of Plaintiff. AR 409-13. Dr. Buttan opined that Plaintiff should be able to sit for 5 to 6 hours in a day, stand for 3 to 4 hours, walk for about 2 to 3 hours, work for 4 to 5 hours a day with hands like manipulating small tools, instruments, and a keyboard. AR 410. Dr. Buttan also opined that Plaintiff's psychiatric concerns were her main problem. AR 410. The ALJ assigned Dr. Buttan's opinion some weight as the opinion supports a need for alternating between sitting and standing, however, the ALJ found that the

---

[3]  The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

manipulative limitation was overly restrictive based on the Plaintiff's 4 out of 5 grip strength bilaterally. AR 32.

An ALJ may meet the burden of identifying specific and legitimate reasons for discounting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)) (superseded by statute on other grounds). When rejecting a medical opinion, the adjudicator is not required to recite specific words. *Magallanes*, 881 F.2d at 755 (reasoning that an incantation of magic words to reject physician's opinion is not required). The Ninth Circuit has held that a reviewing court can properly read the adjudicator's summary of the evidence and findings and draw specific and legitimate inferences therefrom. *Id.* ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.") That standard was met here. The ALJ discusses Dr. Buttan's opinion where she found that Plaintiff had a 4/5 grip strength in both hands and would be able to work about 4 to 5 hours a day with manipulation of small tools, instruments, and a keyboard. AR 32, 410. The Plaintiff argues the ALJ rejected the opinion but the ALJ actually gave it some weight, finding only that the strength findings were inconsistent with the manipulation restrictions. The Court can adequately determine the basis for the ALJ's decision when discounting Dr. Buttan's opinion. Therefore, granting Dr. Buttan's opinion some weight does not constitute reversible error.

**B.  The ALJ did not err in failing to develop the record further.**

Plaintiff further argues that the ALJ failed to adhere to her duty to fully and fairly develop the record by not requesting a medical expert opinion in this case. (Doc. No. 18 at 9.) Specifically, Plaintiff contends that the ALJ rejected the opinions of state agency examiners who found that Plaintiff's mental impairments were not severe, and in doing so the ALJ rendered her own opinion on Plaintiff's mental impairments rather than developing the record further. (*Id* at 9.)

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).  The ALJ's duty to "conduct an appropriate inquiry" is triggered only where evidence

is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. *Id.*; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The record indicates that state agency consultants B. Moura Psy.D., and T. Vanhoose, Ph.D, each found Plaintiff's mental impairments non-severe. AR 79, 92. The ALJ accorded little weight to the opinions of the state agency examiners finding that Plaintiff's anxiety is severe. AR 32. Dr. Whisenhunt performed a psychological evaluation of the Plaintiff on August 29, 2014, and found Plaintiff had a Global Assessment of Functioning (GAF) score of 55. AR 377. Dr. Whisenhunt also diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. AR 377.

Plaintiff contends that the ALJ should have obtained an opinion from a treating or examining source but instead relied on her own interpretations of the clinical findings. (Doc. No. 18 at 10.) However, Plaintiff failed to submit any medical opinions from a treating or examining physician as to her ability to work or her functional limitations. The burden is on the claimant to establish disability. *Terry*, 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled….").

Plaintiff's suggestion that the ALJ had a duty to further develop the record as a result of rejecting the opinions of the state agency examiners is unpersuasive. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.

2001). Plaintiff does not point to anything opinion that is ambiguous or inadequate, simply granting less weight to an opinion does not trigger a duty of the ALJ to request additional evaluations.

Plaintiff's argument that the ALJ improperly relied on her own lay interpretation of the remaining medical data to estimate functioning is likewise unpersuasive. (Doc. No. 18 at 10.) The determination of a claimant's RFC is wholly within the province of the ALJ. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007). The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *See id.* Here, the ALJ did not substitute her judgment for a competent medical opinion, play doctor, or make independent medical findings as Plaintiff contends. The ALJ merely found that the state agency physicians' opinions were inconsistent with the Plaintiff's reports of frequent mental breakdowns, difficulty sleeping, and GAF score. In other words, the ALJ accepted Plaintiff's statements.

Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ did not find that the record was ambiguous or inadequate to determine disability, nor does Plaintiff identify any ambiguous or unclear treatment notes, medical opinions, or other evidence. The ALJ summarized the medical evidence in the record, including evidence related to Plaintiff's mental impairments, and determined Plaintiff's RFC with the support of that record. AR 27-33. The record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's findings and did not present an ambiguity or inadequacy. Indeed, the Court notes that at the hearing, the ALJ asked Plaintiff's attorney if the record was complete, and he responded that it was. AR 44. Under these circumstances, the Court finds that the ALJ was not obligated to further develop the record as Plaintiff suggests.

**C. The ALJ Did Not Err in Evaluating the Opinion Evidence from Spencer Packer, PA-C.**

Plaintiff argues that the ALJ improperly rejected the opinion of her treating provider, Spencer Packer, PA-C. Specifically, Plaintiff contends that the ALJ failed to provide specific, germane reasons for rejecting PA Packer's treating source opinion. (Doc. No. 19 at 10.) The Court disagrees.

On April 13, 2017, PA Packer, completed a medical opinion questionnaire. AR 725-26. PA Packer opined that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry less

than 10 pounds, stand and walk for about 2 hours in an eight-hour workday, sit for a maximum of 4 hours in an eight-hour workday, sit for 15 minutes without changing position, stand for 10 minutes without changing position, would require walking every 15 minutes for 5 minutes, and would need to shift at will between sitting and standing/walking. AR 725. PA Packer also opined that Plaintiff could occasionally twist, stoop, crouch, and climb stairs, could never climb ladders, should avoid concentrated exposure to perfumes, soldering fluxes, and solvents/cleaners, and should avoid moderate exposure to extreme cold, extreme hot, high humidity, fumes, odors, dusts, gases, and chemicals. AR 726. PA Packer further opined that Plaintiff would be absent from about 2 days per month. AR 726.

Contrary to Plaintiff's contention, the ALJ was not required to assess PA Packer's opinion under the standard applicable for a treating physician. Rather, under the regulations applicable to Plaintiff's claim, PA Packer, as a physician's assistant, is not considered an acceptable medical source, but an "other source." 20 C.F.R. § 416.913(d)(3) (effective September 3, 2013 to March 26, 2017) (identifying "other sources" to include public and private social welfare agency personnel). Although required to consider evidence from "other sources," an ALJ may discount testimony from these other sources by providing reasons "germane to each witness for doing so." *See Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

In evaluating PA Packer's opinion, the ALJ reasoned as follows:

> Because a physician's assistant is not an acceptable medical source who can provide medical opinions as defined by our regulations, I have considered the opinion evidence of Mr. Packer as that of an "other source." I assign some weight to the opinions of Mr. Packer. Specifically, the opined restrictions are more significant than what the medical record supports. To illustrate, Mr. Packer's opinion that the claimant could sit for fifteen minutes before shifting position, is more restrictive than what the medical record supports due to claimant's demonstrated normal [] range of motion. However, the claimant's inability to bend over and touch her toes, pain in her lower back, tenderness in her upper and lower extremities and positive straight leg test support the opinion that the claimant will need to alternate between sitting and standing every thirty minutes versus Mr. Packer's opined fifteen minutes.

AR 31-32.

The Court finds that the ALJ provided multiple germane reasons for assigning "some weight" to PA Packer's opinion. First, the ALJ found that PA Packer's opinion as to the length of time

Plaintiff would be able to sit without shifting positions was overly restrictive based on Plaintiff's normal range of motion, strength, and tone in her extremities. AR 32. The ALJ also found that the opinion was more significant than the medical record supports. AR 31-32. The ALJ may reject the competent testimony of an "other medical source" if it is inconsistent with evidence in the record. *Dale*, 823 F.3d at 944–45; *Molina*, 674 F.3d at 1111; *see also Shorter v. Saul*, 777 Fed.App'x 209, 211 (9th Cir. 2019) (concluding ALJ properly rejected other source opinion based on inconsistency with objective medical evidence); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (finding "[i]nconsistency with medical evidence" is a germane reason sufficient to discredit testimony from other sources).

Additionally, PA Packer's restrictive opinion conflicted with that of the state agency examiners, Dr. Jackson and Dr. Kiger. Dr. Jackson and Dr. Kiger opined the Plaintiff could occasionally climb ladders, ropes, and scaffolds, could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. AR. 80-82, 93-95. The ALJ accorded some weight to these opinions for almost the same reason she accorded PA Packer's opinion some weight. Namely, that the record, including Plaintiff's inability to touch her toes, lower back pain, tenderness in extremities, and positive straight leg test, supports a finding that Plaintiff will need to alternate sitting and standing at 30-minute intervals, is precluded from climbing ladders, ropes, and scaffolds, and is limited to occasional balancing, stooping, kneeling, crouching, and crawling. AR 32. As discussed above, the ALJ also granted the opinion of Dr. Buttan some weight. AR 32. Overall, the ALJ reviewed all medical evidence and found it supported the RFC findings, and in discussing the weigh afforded PA Packer, the ALJ provided germane reasons for according the opinion some weight.

///
///
///
///
///
///
///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Donna Rae Harrison.

IT IS SO ORDERED.

Dated: **March 29, 2021**                    /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE